UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE APPLICATION OF USA PURSUANT TO 18 U.S.C. § 3512 FOR ORDER FOR COMMISSIONER'S APPOINTMENT FOR FRAUD INVESTIGATION | ML No: 1:22-ml-00865 |

*Reference:*   DOJ Ref. # CRM-182-81292

APPLICATION OF THE UNITED STATES FOR AN ORDER
FOR A COMMISSIONER'S APPOINTMENT PURSUANT TO 18 U.S.C. § 3512

The United States of America, moving by and through its undersigned counsel, respectfully submits this *ex parte* application for an Order, pursuant to 18 U.S.C. § 3512, appointing the undersigned attorney, Erica Y. Laster, Trial Attorney, Office of International Affairs, Criminal Division, U.S. Department of Justice (or a substitute or successor subsequently designated by the Office of International Affairs), as a commissioner to collect evidence and to take such other action as is necessary to execute this and any subsequent, supplemental requests for assistance with the above-captioned criminal matter from Argentina. In support of this application, the United States asserts:

RELEVANT FACTS

1.     The Central Authority of Argentina, the Ministry of Foreign Affairs and Worship, submitted a request for assistance (the Request) to the United States, pursuant to the Treaty between the Government of the United States of America and the Government of the Republic of Argentina on Mutual Legal Assistance on Criminal Matters, U.S.-Arg., Dec. 4, 1990, S. TREATY DOC. NO. 102-18 (1991) (the Treaty).

2.	As stated in the Request, the Prosecutor's Office of the 3rd District, in Argentina, is prosecuting Gustavo Oscar Trebucq (Trebucq), Daniel Eduardo (Ahumada), and others for fraud, which occurred in or about 2003 to March 2012, in violation of the criminal law of Argentina, specifically, Articles 45, 55, 293, 181(1), and 172 of the Argentine Penal Code. Under the Treaty, the United States is obligated to assist in response to the Request.

3.	According to Argentine authorities, on December 15, 2011, Trebucq fraudulently sold real property owned by a province of Argentina. The province acquired the property in 1950, becoming the title owner of the property and several real estate blocks belonging to Rio Primero, a municipality in Argentina. The property is considered public land and is not intended for commercial or residential use. However, due to an error, the acquisition of the subject property by the province was not properly registered in the Office of the General Registry. At the time of the sale, Trebucq served as a financial advisor who bought, sold, and rented land while forming investment groups for real estate development ventures and Ahumada served as a notary in the Office of the General Registry. Trebucq took advantage of the registry error, falsely represented himself as the true owner of the government land, and fraudulently sold the property to the victims, owners of an Argentine company, by hiding the true owner. Ahumada, as notary, issued public documents at Trebucq's and his co-conspirators request, that knowingly contained false statements regarding the ownership of several properties.

4.	On April 23, 2003, the co-conspirators issued and authorized a public deed, including several false statements relating to the deed. Specifically, the co-conspirators entered information stating that Trebucq and his co-conspirators sold a plot named 26B and 27A for 106,000 AR (approximately 820 USD) to one of the victims of the fraudulent real estate scheme. However, the property was owned by an Argentina State Government. After the sale, one of the

co-conspirators issued a testimonial to record the deed and sale on April 25, 2003, asking for the General Registry to affirm the facts in the false deed. As a result, public officers from the General Registry authorized the fraudulent transfer on May 7, 2003.

5. On March 9, 2012, the co-conspirators were able to obtain deed No. 52, issued using false statements from Trebucq (listed as the seller) and recorded by the notary Ahumada, to fraudulently sell government property recorded as Lot 9 C, lot 11 A, and lot 10 B to the victims, representatives of an Argentine company. As a result, the victims transferred 3,600,000 USD to Trebucq on March 9, 2012. This included a March 9, 2012 transfer of 550,000 USD to Trebucq's bank account in Zurich from Banco Santander Internacional Private Bank (Banco Santander) account number XX113, held in the name of the victim's company and located in the United States.

6. To further the investigation, Argentine authorities have asked U.S. authorities to provide bank records pertaining to Banco Santander account number XX113.

## LEGAL BACKGROUND

7. A treaty[1] constitutes the law of the land. U.S. Const. art. VI, cl. 2. The provisions of a treaty have equal footing with acts of Congress and are binding on the courts. See Asakura v. City of Seattle, 265 U.S. 332, 341 (1924); United States v. The Peggy, 5 U.S. 103 (1801); United States v. Emuegbunam, 268 F.3d 377, 389 (6th Cir. 2001). The provisions of a treaty should be construed liberally "to give effect to the purpose which animates it." United States v. Stuart, 489 U.S. 353 (386) (1989) (internal quotations marks omitted). To the extent that the provisions of a treaty are inconsistent with a preexisting statutory provision, the treaty supersedes the statute. Zschernig v. Miller, 389 U.S. 429, 440-41 (1968).

---

[1] The term "Treaty" used herein encompasses bilateral treaties, multilateral conventions, instruments, and protocols.

8.       The United States and Argentina entered into the Treaty to promote more effective judicial cooperation and assistance between the parties in criminal matters.  <u>See</u> Treaty, pmbl.  The Treaty obligates each party, upon request, to provide assistance to the other in criminal investigations, prosecutions, and related proceedings, including assistance in serving documents, obtaining testimony, statements, and records, and executing searches and seizures. Article 1.  In addition, the Treaty, like 18 U.S.C. § 3512, authorizes federal courts to use compulsory measures to further the execution of such requests. Article 5 ("The courts of the Requested State shall have authority to issue subpoenas, search warrants, or other orders necessary to execute the request.").

9.       When executing a treaty or non-treaty request for assistance from a foreign authority, an attorney for the government may file an application to obtain any requisite court orders under 18 U.S.C. § 3512.  This section authorizes a federal court to issue such orders and provides in pertinent part:

> Upon application, duly authorized by an appropriate official of the Department of Justice, of an Attorney for the Government, a Federal judge may issue such orders as may be necessary to execute a request from a foreign authority for assistance in the investigation or prosecution of criminal offenses, or in proceedings related to the prosecution of criminal offenses, including proceedings regarding forfeiture, sentencing, and restitution.
>
> \*                    \*                    \*
>
> [A]n application for execution of a request from a foreign authority under this section may be filed . . . in the District of Columbia.
>
> \*                    \*                    \*
>
> The term "foreign authority" means a foreign judicial authority, a foreign authority responsible for the investigation or prosecution of criminal offenses or for proceedings related to the prosecution of criminal offenses, or an authority designated as a competent authority or central authority for the purpose of making requests for assistance pursuant to an agreement or treaty with the United States regarding assistance in criminal matters.

18 U.S.C. § 3512(a)(1), (c)(3), (h)(2).

10. Congress enacted this section to make it "easier for the United States to respond to [foreign] requests by allowing them to be centralized and by putting the process for handling them within a clear statutory scheme." 155 Cong. Rec. 6,810 (2009) (statement of Sen. Whitehouse); Foreign Evidence Request Efficiency Act of 2009, Pub. L. No. 111-79, 123 Stat. 2086.² This section provides clear authority for the federal courts, upon application duly authorized by an appropriate official of the Department of Justice, to issue orders that are necessary to execute a foreign request.

11. An application is duly authorized by an appropriate official of the Department of Justice when the Office of International Affairs³ has reviewed and authorized the request, and executes the request itself or delegates execution to another attorney for the government.⁴ Upon such a duly authorized application, Section 3512 authorizes a federal judge⁵ to issue "such orders

---

² Prior to the enactment of 18 U.S.C. § 3512, the United States routinely utilized the procedures authorized by 28 U.S.C. § 1782 (the "commissioner" process) to execute requests from foreign authorities. See In re Request from the United Kingdom, 685 F.3d 1, 11 (1st Cir. 2012) (18 U.S.C. § 3512 provides a more streamlined process than 28 U.S.C. § 1782, the statute under which foreign requests were executed prior to enactment of section 3512); see also Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 247-49 (2004) (describing history of Section 1782). When enacting Section 3512, Congress anticipated that improved U.S. handling of foreign requests would ensure reciprocity in response to U.S. requests for assistance in its criminal investigations. See, e.g., 155 Cong. Rec. 10,093 (2009) (statement of Rep. Schiff).

³ The Attorney General, through regulations and Department of Justice directives, delegated to the Office of International Affairs the authority to serve as the "Central Authority" under treaties and executive agreements between the United States and other countries pertaining to mutual assistance in criminal matters. See 28 C.F.R. 0.64-1, 0.64-4, and Appendix to Subpart K, Directive Nos. 81B and 81C (2018).

⁴ "Section 3512 can be invoked only when authorized by OIA. . . . Such authorization occurs when an attorney for the government, or his or her office, receives the referral of the request for execution from OIA." Memorandum from the Deputy Attorney General to Department of Justice Components (May 16, 2011) (on file with the Office of International Affairs).

⁵ The term "federal judge" includes a magistrate judge. See 18 U.S.C. § 3512(h)(1); Fed. R. Crim. P. 1(b)(3)(B) (including a magistrate judge in the definition of federal judge).

as may be necessary to execute [the] request," including: (1) search warrants under Fed. R. Crim. P. 41; (2) orders for electronic records under 18 U.S.C. § 2703; (3) orders for pen registers or trap and trace devices under 18 U.S.C. § 3123; and (4) orders appointing a person to direct the taking of testimony or statements and/or the production of documents or other things. See 18 U.S.C. § 3512(a)(1)--(b)(1). In addition, a federal judge may order any necessary procedures to facilitate the execution of the request, including any procedures requested by the foreign authority to facilitate its use of the evidence. 18 U.S.C. § 3512(a)(1).

12. Section 3512 also authorizes any person appointed to direct the taking of testimony or statements and/or the production of documents. The appointed person has authority to: (1) issue an order requiring a person to appear and/or produce documents or other things; (2) administer any necessary oaths; and (3) take testimony or statements and receive documents or other things. 18 U.S.C. § 3512(b)(2). In ordering a person to appear and/or produce documents or other things, the person appointed, commonly referred to as the "commissioner," typically uses a subpoena entitled "Commissioner's Subpoena." Any such subpoena may be served or executed anywhere in the United States. 18 U.S.C. § 3512(f). A sample "Commissioner's Subpoena" is included as Attachment A.

REQUEST FOR ORDER

13. The Office of International Affairs has reviewed and authorized the Request, and is executing the Request itself. Consequently, this application for an Order appointing the undersigned attorney as a commissioner to collect evidence and to take such other action as is necessary to execute the Request has been "duly authorized" within the meaning of Section 3512. In addition, the Request was submitted by an appropriate "foreign authority," the Ministry of Foreign Affairs & Worship, the designated Central Authority in Argentina, seeks assistance in

the prosecution of fraud – a criminal offense in Argentina. The requested Order is necessary to execute the Request, and the assistance requested, i.e., the production of bank records, falls squarely within that contemplated by Section 3512 and the Treaty. Finally, this application was properly filed in the District of Columbia.

14. When executing a foreign request for assistance in a criminal matter, both Section 3512 and the Treaty authorize the use of compulsory process comparable to that used in domestic criminal investigations and/or prosecutions. Because subpoenas utilized in U.S. criminal proceedings (i.e., grand jury and criminal trial subpoenas) are issued without notice to any person other than the recipient (i.e., no notice to targets or defendants), orders and commissioner subpoenas issued in execution of a foreign request pursuant to Section 3512 and the applicable treaty likewise should require no notice other than to the recipients. This is true even if the Requesting State, as here, seeks financial records, because the Right to Financial Privacy Act, 12 U.S.C. §§ 3401 et seq., including its notice provisions, does not apply to the execution of foreign requests for legal assistance. Young v. U.S. Dept. of Justice, 882 F.2d 633, 639 (2d Cir. 1989), cert. denied, 493 U.S. 1072 (1990); In re Letters of Request from the Supreme Court of Hong Kong, 821 F. Supp. 204, 211 (S.D.N.Y. 1993); In re Letter of Request for Judicial Assistance from the Tribunal Civil de Port-Au-Prince, Republic of Haiti, 669 F. Supp. 403, 407 (S.D. Fla. 1987). Accordingly, this Court should authorize a commissioner to collect the evidence requested without notice to any person(s) or entity(ies) other than the recipient(s) of any given commissioner subpoena.

15. Therefore, the United States respectfully requests that this Court issue the attached Order, pursuant to 18 U.S.C. § 3512, appointing the undersigned attorney, Erica Y. Laster, Trial Attorney, Office of International Affairs (or a substitute or successor subsequently

designated by the Office of International Affairs) as a commissioner, authorizing the undersigned to take the actions necessary, including the issuance of commissioner's subpoenas, as needed, to collect the evidence necessary to execute any pending request for assistance and any subsequent, supplemental requests in connection with the same matter, in a manner consistent with the intended use of the.

                                        Respectfully submitted,

                                        VAUGHN A. ARY
                                        DIRECTOR
                                        OFFICE OF INTERNATIONAL AFFAIRS
                                        OK Bar Number 12199

By:       /s/ Erica Laster
                Erica Y. Laster
                Trial Attorney
                D.C. Bar Number 1032449
                Office of International Affairs
                Criminal Division, Department of Justice
                1301 New York Avenue, N.W.
                Washington, D.C. 20530
                (202) 353-1677
                Erica.Laster@usdoj.gov